UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD EUGENE LEEPER, JR., <br><br> Plaintiff, <br><br> v. <br><br> CANYON COUNTY JAIL; CANYON COUNTY SHERIFF'S DEPARTMENT; SERGEANT HAMMOND; and MISTY PENDILL, <br><br> Defendants. | Case No. 1:25-cv-00316-BLW <br><br> **INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Ronald Eugene Leeper Jr.'s Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

**1.      Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim

for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

## 2.    Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction, currently incarcerated at the Idaho State Correctional Institution. The events described in the Complaint occurred when Plaintiff was being held in the Canyon County Jail.

Plaintiff states that in March and April 2025, he requested a religious diet from the jail. Defendant Sergeant Hammond denied the request, stating that Plaintiff "didn't hold a strong enough belief" to receive a religious diet. *Compl*., Dkt. 3, at 2. Though Plaintiff does not identify his religion or describe his religious beliefs, it appears he requested a kosher diet. *Id*. at 3.

Plaintiff was, however, granted a vegan diet. In April 2025, Defendant Misty Pendill, the food service supervisor for Summitt, LLC—the private company providing jail inmates with food under contract with Canyon County—gave Plaintiff a vegan meal instead of the kosher meal he had requested. Pendill also did not give Plaintiff the names of a dietician or a rabbi as Plaintiff requested. *Id*.

Plaintiff seeks monetary damages in "the maximum amount" allowed by law. *Id*. at 2, 3.

## 3.     Discussion

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.     *Standards of Law*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). This state action requirement means that Section 1983 does not provide a remedy for

purely private conduct, "no matter how unfair that conduct may be." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988). A private party can be subject to suit under § 1983 for violating a plaintiff's civil rights only in narrow circumstances—"state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted).

The Supreme Court has identified several contexts in which a private party can be considered a state actor for purposes of a civil rights action. *Id.* at 296. These include the following situations: (1) the private party's action results from the state's "exercise of coercive power" or "significant encouragement"; (2) the private party participates in "joint activity" with the state; (3) the private party is "controlled by an agency of the State"; (4) the private party "has been delegated a public function by the State"; and (5) the private party is "entwined with governmental policies," or "the government is entwined in [the private party's] management or control." *Id.* (internal quotation marks omitted). A private party "may be designated a state actor for some purposes but still function as a private actor in other respects." *Caviness v. Horizon Community Learning Ctr.*, 590 F.3d 806, 814 (9th Cir. 2010).

A defendant acting under state law causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

That is, jail officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

To bring a § 1983 claim against a local governmental entity, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against

such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

Plaintiff asserts that Defendants have violated his right to religious exercise. The Free Exercise Clause of the First Amendment absolutely protects the right to believe in a religion; it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison," and a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). Further, the burden placed on the inmate's religious exercise by the defendants' actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out

of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and (4) whether there is an absence of "obvious, easy alternatives to the policy adopted by" prison officials. *O'Lone*, 482 U.S. at 350–53 (internal quotation marks and alterations omitted) Courts must take care to avoid "substitut[ing] [their]

judgment on difficult and sensitive matters of institutional administration." *Id*. at 353 (internal quotation marks and alteration omitted).

Prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). However, this right must be balanced, under *Turner v. Safley*, 482 U.S. 78, with the prison's "legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties." *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993).

A jail or prison is not required under the First Amendment to provide a specific religious meal for an inmate, but may require him to choose from a range of diets, provided that one of these diets allows the inmate to comply with his religious dietary restrictions:

> Because Plaintiffs can choose a diet plan that does not include any food that would violate their religious dietary laws, they have not established that they are substantially burdened by the failure of IDOC to offer a specific, separately-prepared Catholic or Halal meal. Plaintiffs are not entitled to demand meat in a religious diet—they are perfectly able to choose a vegan diet (or a non-pork or lacto-ovo diet) that complies with their religious dietary restrictions. IDOC's decision to offer the selective diets instead of specific religious meals prepared according to each inmate's religious beliefs is reasonably related to the legitimate penological purpose of meeting and maintaining each prisoner's nutritional needs, while still running an efficient institution. The First Amendment does not require prison officials to offer each prisoner his own religious meal option, tailored to that particular prisoner's expressed religious belief.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

*Hogan et al. v. IDOC*, Case No. 1:15-cv-00308-BLW, Dkt. 11 at 11 (D. Idaho Dec. 15, 2015).

The First Amendment is not the only source of religious protection within a prison. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*., provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902–04 (9th Cir. 2014).

An inmate asserting a claim under RLUIPA must plausibly allege that the governmental action constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). For an official's action to constitute a substantial burden on an inmate's religious exercise, it "must impose a significantly great restriction or onus upon such exercise." *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). In determining whether an inmate's religious exercise is substantially burdened, a court may not inquire "into whether a particular belief is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 10

However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Id.*

If the inmate establishes "the prima facie existence" of a substantial burden on the exercise of the inmate's religion, then the burden shifts to prison officials "to prove that [the] substantial burden on [the inmate's] exercise of his religious beliefs is *both* 'in furtherance of a compelling governmental interest' *and* the 'least restrictive means of furthering that compelling governmental interest.'" *Warsoldier*, 418 F.3d at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)).

As the Supreme Court has explained,

> The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party. If a less restrictive means is available for the Government to achieve its goals, the Government must use it.

*Holt v. Hobbs*, 574 U.S. 352, 364–65 (2015) (internal citations, quotation marks, and alterations omitted). Prison officials or a state department of correction "cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999.

Although RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights, *id.*, the statute does not "elevate accommodation of religious observances over an institution's need to maintain order and safety," *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005). A prisoner's requests for religious accommodation must not override

other significant interests within a prison setting. "Should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Cutter*, 544 U.S. at 726. In the words of the Supreme Court, "context matters." *Id*. at 723 (quotation marks and alteration omitted).

Like the First Amendment, RLUIPA also does not require a prison or jail to provide a specifically-prepared religious meal for an inmate, so long as the diet the inmate is offered would not violate the inmate's religious dietary restrictions. In *Watkins v. Shabazz*, the Ninth Circuit held that a prison did not violate RLUIPA by failing to provide a Halal diet to a religious inmate because the prison offered "two alternatives to eating non-Halal meat: to eat the nutritionally equivalent meat substitute provided by the prison, or to find an outside religious organization to contract with the prison to provide Halal meat." 180 F. App'x 773, 775 (9th Cir. 2006) (unpublished). Because the inmate did not establish that these options were unreasonable, the prison could not be held liable under RLUIPA.

### B.    The Complaint Does Not State a Plausible Claim Against the Canyon County Jail or the Canyon County Sheriff's Department

The Complaint contains no allegations against the Canyon County Jail or the Canyon County Sheriff's Department. Instead, Plaintiff complains only of actions taken by the individual Defendants. There is nothing in the Complaint to plausibly suggest that Hammond and Pendill were acting pursuant to a policy, custom, or practice of Canyon

County in denying Plaintiff's request for a religious diet. Plaintiff may attempt to remedy this deficiency in an amended complaint.

### C.     The Complaint Does Not State a Plausible Claim Against Hammond or Pendill

Plaintiff's claims against Defendants Hammond and Pendill are implausible because the allegations do not give rise to a reasonable inference that being offered a vegan meal instead of a specific kosher meal constituted a substantial burden on the exercise of Plaintiff's religious beliefs. Plaintiff does not describe his religious beliefs at all—much less to the extent necessary to show that not being provided the diet he asked for constituted a "significantly great restriction or onus upon" Plaintiff's religious exercise. *San Jose Christian College*, 360 F.3d at 1034; *see also Wintrode v. Ada Cnty. Jail Emps.*, No. 1:24-CV-00015-DCN, 2025 WL 2374328, at *5 (D. Idaho Aug. 13, 2025) (unpublished) ("The Complaint in this case does not identify or describe Plaintiff's religion, his belief as to why his religion requires the diet he has requested, or the religious texts and other items of which Plaintiff alleges he has been deprived. Therefore, the Complaint does not raise a plausible inference that the deprivation of Plaintiff's requested diet, texts, and other items constitutes a substantial burden on Plaintiff's religious exercise, and Plaintiff's First Amendment and RLUIPA claims are implausible.").

Though Plaintiff has not described his religion or its dietary restrictions, the Court will presume for purposes of this Order that Plaintiff is Jewish and abides by the generally accepted restrictions of that faith that require a kosher diet. Meat and dairy are

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

the types of foods restricted in a kosher diet. A vegan diet contains no meat or dairy. Therefore, a vegan diet will usually also be a kosher diet, although sometimes certain ingredients might be used in a kosher diet that could render it unkosher. The Complaint here does not plausibly allege that the vegan meal Plaintiff was offered in the Canyon County Jail would, in fact, violate kosher restrictions.

Like the meals offered plaintiffs in *Hogan* and *Watkins*, that Plaintiff was offered a vegan meal simply does not support a reasonable inference that eating the meal would violate Plaintiff's religious beliefs. *See Hogan*, Case No. 1:15-cv-00308-BLW, Dkt. 11 at 11 ("Because Plaintiffs can choose a diet plan that does not include any food that would violate their religious dietary laws, they have not established that they are substantially burdened by the failure of [the prison] to offer a specific, separately-prepared Catholic or Halal meal. Plaintiffs are not entitled to demand meat in a religious diet—they are perfectly able to choose a vegan diet … that complies with their religious dietary restrictions…. The First Amendment does not require prison officials to offer each prisoner his own religious meal option, tailored to that particular prisoner's expressed religious belief."); *Watkins*, 180 F. Appx. at 775 (finding no RLUIPA violation because defendants offered plaintiff "two alternatives to eating non-Halal meat: to eat the nutritionally equivalent meat substitute provided by the prison, or to find an outside religious organization to contract with the prison to provide Halal meat"). Thus, Plaintiff has not plausibly alleged a substantial burden upon the exercise of his religious beliefs, and his First Amendment and RLUIPA claims are subject to dismissal as implausible.

Plaintiff's claims against Defendant Pendill are subject to dismissal for an additional reason: the Complaint does not plausibly allege that Pendill acted under color of state law.

Pendill is an employee of Summitt, LLC, a private company. As explained above, the Supreme Court has held that a private actor can act under state law in several contexts. However, the only context potentially implicated by the allegations in the Complaint is the public function context—that is, where the government has delegated a public function to a private party.

To constitute state action, however, the function delegated to the private party cannot be just any function. Rather, "[t]he public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 924 (9th Cir. 2011) (internal quotation marks omitted). For example, in *West v. Atkins*, the Supreme Court found state action on the part of a private physician providing medical treatment to prisoners because (1) "the State bore an affirmative obligation to provide adequate medical care" to prisoners; (2) "the State delegated that function" to the physician; and (3) the physician "voluntarily assumed that obligation by contract." 487 U.S. 42, 56 (1988).

Unlike providing medical care to incarcerated individuals, providing cafeteria food is not a function that is traditionally and exclusively governmental. *See Florer*, 639 F.3d at 924. Thus, the Complaint does not permit a reasonable inference that Pendill was "a state actor such that any action taken by [Pendill] is 'fairly attributable' to a public

entity." *Venegas v. Bianco*, 2019 WL 10301094, at *9 (C.D. Cal. Aug. 26, 2019) (holding

that an employee of Keefe Commissary Network was not a state actor) (quoting *Rendell-*

*Baker v. Kohn*, 457 U.S. 830, 840–43 (1982)).

4.      **Standards for Amended Complaint**

        If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the

actions complained of have resulted in a deprivation of Plaintiff's constitutional rights.

*See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by*

*Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal

connection between each defendant's actions and the claimed deprivation. *Taylor*, 880

F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and

conclusory allegations of official participation in civil rights violations are not sufficient

to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and

1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see*

*also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement.") (internal quotation marks and alteration

omitted).

        Rather, for each cause of action against each defendant, Plaintiff must state the

following: (1) the name of the person or entity that caused the alleged deprivation of

Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

state employment or a state contract) or a private entity performing a state function;

(3) the dates on which the conduct of the defendant allegedly took place; (4) the specific

conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or

statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of

the violation are met—for example, Plaintiff must allege facts satisfying the elements of a

First Amendment or RLUIPA claim; (7) the injury or damages Plaintiff personally

suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In

addition, Plaintiff must include facts showing Plaintiff can meet the *Monell* requirements,

if Plaintiff continues to name county entities as Defendants.

      Further, any amended complaint must contain all of Plaintiff's allegations in a

single pleading and cannot rely upon, attach, or incorporate by reference other pleadings

or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An]

amended complaint supersedes the original, the latter being treated thereafter as non-

existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d

896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*.,

896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering

judgment against a party named in the initial complaint, but not in the amended

complaint).

      Plaintiff must set forth each different factual allegation in a separate, numbered

paragraph. The amended complaint must be legibly written or typed in its entirety, and it

should be clearly designated as an "Amended Complaint." Plaintiff's name and address

should be clearly printed at the top left corner of the first page of each document filed

with the Court.

      If Plaintiff does not amend within 28 days, or if the amendment does not comply

with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738

F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

**ORDER**

**IT IS ORDERED:**

1.    The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[1]

2.    If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. §§ 1915 and 1915A; Fed. R. Civ. P. 41(b).

3.    Because an amended complaint is required for Plaintiff to proceed, Plaintiff's request for appointment of counsel (contained in the Complaint)

---

[1] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g). *Spencer v. Barajas*, 140 F.4th 1061, 1066 (9th Cir. 2025).

is DENIED without prejudice. Plaintiff may renew the request for counsel

in an amended complaint.

DATED: November 12, 2025

B. Lynn Winmill
U.S. District Court Judge